**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------x

NS UNITED KAIUN KAISHA, LTD.,

                         Petitioner,                15 Civ. 01784 (PAE)

           -against-

COGENT FIBRE INC.,
                      Respondent.

----------------------------------------------------x

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PETITIONER'S MOTION TO RECOGNIZE AND ENFORCE ARBITRATION**
**AWARD AND IN SUPPORT OF CROSS-MOTION TO VACATE**

MAVRONICOLAS & DEE LLP
Anthony J. Mavronicolas
415 Madison Avenue, 18th Floor
New York, New York 10017
Tel: 646.770.0024
Fax: 866.774.9005
amavronicolas@mavrolaw.com

*Attorneys for Respondent Cogent Fibre Inc.*

## **TABLE OF CONTENTS**

Pages

PRELIMINARY STATEMENT……………………………………………………   1

STATEMENT OF FACTS……………………………………………………….   1

LAW…………………………………………………………………………...   2

    A.  The Majority's Award of Damages was Issued
        in Manifest Disregard of the Law……………………………………   2

        1.  Applicable Legal Standard-Manifest Disregard of Law…………   2

        2.  The Facts Establishing Manifest Disregard of the Law………….   4

    B.  The Majority Also Exceeded Their Authority in
        Awarding Attorneys Fees as Damages…………………………………   10

        1.  Applicable Legal Standard-Arbitrators Exceeding Authority…….   10

        2.  The Legal Standard Applied to the Facts at Bar…………………..   11

    C.  Despite Repeated Objections the Procedures Used by the Arbitrators
        Were Fundamentally Unfair Because They Allowed Substantive
        Matters to be Submitted by Email Without Invitation Which Resulted
        in Unilateral Submissions That Precipitated Decisions Before Both
        Parties Could be Fully Heard……………………………………………..   14

CONCLUSION………………………………………………………………….   17

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                <u>Pages</u>

<u>*Asturiana De Zinc Marketing Inc.v.LaSalle Rolling Mills,*</u>
20 Fed. Supp 2d 670 (S.D.N.Y. 1998)................................................................   14

<u>*Banco De Seguros Del Estado v. Mutual Marine Office,*</u>
344 F.3rd 255 (2d Cir. 2003).............................................................................   12

<u>*Fed. Ins. Co. v. Oslo,*</u>
2012 U.S. Dist. LEXIS 127838 (S.D.N.Y. 2012)..................................................   2

<u>*Green Ttree Financial Corp v. Bazzel,*</u>
539 US 444 (2003).........................................................................................   4, 9

<u>*Katz v. Feinberg,*</u>
290 F.3rd 95 (2d Cir, 2002)..............................................................................   12-13

L. Edmonson, <u>*Domke on Commercial Arbitration,*</u>
3rd Ed, §39.6 (2006)......................................................................................   10

<u>*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,*</u>
808 F.2d 930 (2d Cir. 1986)…………………............................................   2

<u>*PaineWebber Inc. v. Bybak,*</u>
81 Fed 3d 1193 (2d Cir. 1996).........................................................................   9, 12

<u>*Schwartz v. Merril Lynch & Co.,*</u>
665 F 3d 444 (2d Cir. 2011).............................................................................   13

<u>*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,*</u>
130 S. Ct. 1758 (2010)....................................................................................   2-4, 9, 11-12

<u>*Tempo Shain Corp v, Bertek Inc.,*</u>
120 F.3d 16 (2d Cir. 1997)..............................................................................   14

<u>*Totem Marine Tug and Barge v. North American Towing,*</u>
607 F.2nd 649 (5th Cir. 1979)..........................................................................   12-13

<u>*United Paperworkers v  Misco,*</u>
484 US 29, 108 S.Ct. 364 (1987).......................................................................   10

<u>*United Steelworkers v. Enterprise Wheel,*</u>
363 US 593, 80 S.Ct. 1358 (1960).....................................................................   10

*Volt Info Sciences Inc. v. Bd. of Trustees of Leland Stanford Jr. University,*
489 U.S. 468 (1989)........................................................................   14

*Wilko v. Swan,*
346 U.S. 427 (1953)…………………………………………....   2


**Statute**

9 USC § 10.............................................................................   1, 3-4, 10, 12, 16

## PRELIMINARY STATEMENT

This matter comes before this Honorable Court as a challenge to a January 23, 2015 arbitration award ("Award") arising out of a consecutive voyage charter party between the vessel owner, which after entering into that charter party, changed its business' name to NSU United Kaiun Kaisha Ltd. ("NS United") and the charterer, which after entering into that charter party, changed its business' name to Cogent Fibre Inc. ("Cogent"). Cogent now moves the Court pursuant to 9 USC 10 (a)(4) (2015) seeking an order vacating that Award. The grounds for Cogent's Motion to Vacate are that by awarding damages in the form of attorneys' fees in the amount of $889,547.95, over the dissenting opinion of arbitrator Jack Berg, the majority of the arbitrators both exceeded their authority and did so in manifest disregard of the well settled American Rule on the awarding of attorneys' fees. Further, the majority of the arbitrators by awarding additional damages in the amount of $10,761,847, again over the dissenting opinion of arbitrator Jack Berg, did so in manifest disregard of the law of damages.

And finally, that the arbitrators, acting through its Chairman, exceed their authority by repeatedly conducting significant matters of substance in the arbitration via emails, over the repeated objections of Cogent.

## STATEMENT OF FACTS

The facts pertaining to the instant matter are fully set forth in the Declaration of Anthony Mavronicolas ("Mav. Decl.") that has been filed herein. As such, Cogent will not belabor the Court with a full recapitulation of those facts here, but rather will refer the Court to the most salient of those facts that are the grounds for Cogent's Motion to Vacate and defense to confirmation.

# LAW

**A. THE MAJORITY'S AWARD OF DAMAGES WAS ISSUED IN MANIFEST DISREGARD OF THE LAW**

1. Applicable Legal Standard-Manifest Disregard of Law

Manifest disregard of the law was first recognized as a non-statutory grounds for vacating arbitration awards by the Supreme Court in a footnote in *Wilko v. Swan*, 346 U.S. 427, fn.24 (1953). The Second Circuit has concluded that manifest disregard "clearly means more than error or misunderstanding with respect to the law". *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986); *accord, e.g.*, *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1767 (2010). To prevail on that standard it must be shown that the arbitrators were presented with the relevant legal principle, understood that the presented legal principle controlled the issue they need to address, but then disregarded that controlling legal principle by refusing to apply it. *Stolt-Nielsen SA*, 130 S. Ct. at 1768; *Fed. Ins. Co. v. Oslo,* 2012 U.S. Dist. LEXIS 127838, *12 (S.D.N.Y. 2012) (Engelmayer, J.)

*Stolt-Nielsen SA*, at 1764 is particularly instructive because the Supreme Court in that case had before it an arbitration award arising out of a maritime contract in the form of a charter party. As in the matter before this Court, that charter party contained an arbitration clause that referred to arbitration: " Any dispute". *Stolt-Nielsen SA*, at 1765. Similarly, the arbitration clause agreed upon by Cogent and NS United referred to arbitration: "If any dispute". (Mav. Decl. Exh. 1) The arbitration in *Stolt-Nielsen SA*, at 1765, was silent on whether the arbitrators could entertain a class action arbitration. The arbitration clause in the instant matter was silent on the arbitrators' power to award attorneys' fees. *Id*. The arbitrators in *Stolt-Nielsen SA*, at 1766 ruled that the arbitration

could proceed before them as a class action, but stayed the arbitration to allow the parties to seek judicial review of that decision.

The District Court vacated the award on the grounds the arbitrators' decision was made in manifest disregard of the law. *Id*. The Court of Appeals in turn reversed on the grounds that the arbitrator had not been presented with the maritime rule of custom and usage the District Court had found the arbitrators had disregarded, and that New York law was silent on the class action issue. *Id*.

Justice Alito writing for the majority in this case began the opinion by first noting that a petitioner seeking to vacate an award must clear a high hurtle, but then immediately noted that an award may be vacated under Section 10(a)(b) of the FAA on the grounds that the arbitrator has exceeded their power. *Stolt-Nielsen SA*, at 1767. In doing so, Justice Alito citied the Supreme Court's earlier line of decisions in which the Court explained: "It is only when [an] arbitrator strays from the interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice 'that his decision may be unenforceable.'" *Id.* (citations omitted)

However, the majority also assumed *arguendo* that the manifest disregarded standard used by the courts below also applied to the facts before it and found that those facts satisfied that standard. *Stolt-Nielsen SA*, at 1768 fn.3. Addressing those facts, the Court explained that because the parties in their arbitration clause had not reached an agreement on the issue before the arbitrators, the arbitrator's proper task was to identify the rule of law that governed that situation. *Stolt-Nielsen SA*, at 1768. Instead the majority found that if the arbitrators had been properly engaged in that task they would have looked to the FAA, federal maritime law or New York law. *Id*. But as the majority

3

noted the arbitrators did not consider whether the FAA, maritime law or New York law provided an applicable rule of law, instead those arbitrators relied on arbitration awards which had applied the Supreme Court's leading decision on class action arbitration, _Green Ttree Financial Corp v. Bazzel,_ 539 US 444 (2003) to reach their decision.   _Stolt-Nielsen S.A._  at 1769  As Justice Alito noted: "The arbitration panel thought that _Bazzle_ 'controlled' the 'resolution' of the question…" _Stolt-Nielsen S.A._  at 1770  Further, he noted that the arbitrator's comment on the breadth of the charter party contract  and the need to ascertain the parties intentions which was consistent with New York law as noted by the arbitrators were beside the point where in the face of a silent arbitration clause the rule of decision had to be derived form the FAA, maritime law or New York law. _Id_. These then were the facts the majority held satisfied the manifest disregard standard for vacating an arbitration award.

      2. The Facts Establishing Manifest Disregard of the Law

      The facts before this Court satisfy both the manifest disregard of law standard as well as the grounds for vacating an arbitration award under Section 10 (a)(4) of the FAA. On liability the arbitrators were unanimous in finding Cogent liable for breach of the charter party contract with NS United. (Mav. Decl. Exh. 9) It was, however, on the awarding of damages in three components that the majority of the arbitrators acted beyond the scope of their authority as provided for in the arbitration agreement and in manifest disregard of the law. The dissenting arbitrator on these three components of damages, Jack Berg, in his dissent set out how in each of these three components of damages the majority clearly disregarded the governing law on damages.  (Mav. Decl. Exh. 9, Berg Dissent, p. 1-6)

In the first component of damages for breach of that charter party the majority awarded NS United $1,324,836 for the two months prior to NS United withdrew the ship from Cogent. (Mav. Decl. Exh 9, p. 25) The legal basis upon which the majority awarded this component of damages was on the sole ground that it was Cogent that had breached the charter parry during that time, not NS United. Id. Mr. Berg dissents from this component of the majority's award on the grounds that: "I would agree that NSU is entitled to lost revenue for this period but any lost revenue should have reflected funds that could have been earned in mitigation."  (Mav. Decl. Exh. 9, Berg Dissent, p. 4) No principle of the black letter law of damages could be more fundamental than the proposition that a non-breaching party to a contract has the obligation to mitigate damages-a principal both NS United and Cogent provided to the arbitrators with cited legal authority. (Mav. Decl. Exh. 10, p. 69, 31) The majority nevertheless chose to ignore this fundamental legal principle and awarded $1,324,836 in damages for breach of contract without requiring any mitigation efforts from NS United[1]. (Mav. Decl. Exh 9, p. 25) In doing so they disregarded well settled law that had been presented to them.

In the second component of damages the majority awarded NS United $8,609,064 on the sole grounds that NS United's mitigation efforts after withdrawing the ship were "reasonable". (Mav. Decl. Exh 9, p. 25-28) Mr. Berg dissents on the basis that NS United's claim for damages for this second component was based: "In effect, NSU's commercial decision to keep the vessel in the Atlantic spot trade was primarily for its own financial benefit." (Mav. Decl. Exh. 9, Berg Dissent, p. 4) Here again Mr. Berg's

---

[1] NS United offered the arbitrator no legal authority rebutting this fundamental principal of damages beyond citing authority to argue that, as a non-breaching party, NS United had no duty to mitigate until Cogent was in breach. (Mav. Decl. Exh 10, p. 30) The majority however awarded this component of damages because of: '…the fact that the Charterer (Cogent)was in breach of the CVC (charter party) not NSU." (Mav. Decl. Exh. 9, p. 25)

5

dissent conforms to the well settle law in this area of damages. Professor Martin Davies, the Admiralty Law Institute Professor of Maritime Law at the Tulane Law School and Director of the Tulane Maritime Law Center provided the arbitrators with an expert report and sworn testimony in which he explained to the arbitrators that the law of damages provided that the consequences of the commercial decisions of a non-breaching party fall on the non-breaching party, not the breaching party. (Mav. Decl. Exh. 11)(Mav. Decl. Exh. 12, p. 1851) NS United never provided the arbitrators with any legal authority to support a contrary claim that the consequences of a commercial decision of a non-breaching party during the course of mitigation do not fall upon the non-breaching party. (Mav. Decl. Exh. 10, p. 20-29, 30-39) And that Professor Davies was only providing the arbitrators with well settled law and not partisan argument was demonstrated during his cross-examination:

> Q. All right. Okay. I just want to make is clear
>    so there are-so your testimony is there are
>    no decisions-you did the research , you
>    found no decisions. If you found them
>    they would have been included in your
>    report?
> A. Yes.
> Q. Even if the did not support your position?
> A. That would be my position. I'm not arguing
>    for a particular position here, I'm just stating
>    the law as I understand it. (Exhibit 12 p. 1882)

So despite the fact that the majority was presented with the well settled law of damages to the effect that a non-breaching parties commercial decision that results in losses fall upon the non-breaching, not the breaching party to who a duty of mitigation is due, the majority deliberately chose to disregard that principle of law in awarding this second component of damages in the amount of $8,609,064.  (Mav. Decl. Exh. 9, p. 28)

For the third component of damages the majority awarded attorney fees in the amount of $889,547.95. (Mav. Decl. Exh 9, p. 29-31) In his dissent, relying on well settled legal authority. Mr. Berg concluded that the majority's award of attorneys' fees: "…exceeded its powers in awarding counsel fees in the particulars of this case and contrary to prevailing law." (Mav. Decl. Exh. 9, Berg Dissent, p. 5) Both the facts of this matter as well as the applicable law fully support Mr. Berg's dissent that in awarding attorneys' fees the majority both exceeded its authority and acted in manifest disregard of the law.

The arbitration clause from which the arbitrators draw their power, the charter party contract between Cogent and NS United, provided the arbitrators with *no* such authority to award attorneys' fees:

> If any dispute or difference should arise under
> this Charter, same to be referred to three parties
> in the City of New York, one to be appointed by
> each of the parties hereto, the third by the two so
> chosen, and their decision, or that of any two of
> them, shall be final and binding, and this agreement
> may, for enforcing same, be made rule of Court.
> Said three parties to be shipping men. (Mav. Decl. Exh. 1)

Further, at the preliminary hearing convened by the arbitrators in this arbitration to discuss scheduling and procedural matters the Chairmen of the arbitration a panel asked whether the parties would agree that the arbitration would be conducted by adopting the use of the arbitration rules of the Society of Maritime Arbitrators in this arbitration. (Mav. Decl. ¶ 2) Section 30 of the arbitration rules of the Society of Maritime Arbitrators explicitly empowered arbitrators to award attorneys' fees and expenses in prosecution and defense of a case. (Mav. Decl. Exh. 3) Counsel for Cogent declined to agree on the

use of the rules of the Society of Maritime Arbitrators because those rules empowered the arbitrators to award attorneys' fees. (Mav. Decl. ¶ 2)

At the conclusion of the evidentiary hearing, but prior to the submission of briefs, NS United made an application to the arbitrators requesting the posting of security in the amount of $500,000 to secure attorneys' fees. (Mav. Decl. ¶ 3) Cogent responded, inter alia, that Cogent had explicitly refused to agree to have the arbitration conducted under the rules of the Society of Maritime Arbitrators because those rules empowered arbitrators to award attorneys' fees. Id Cogent also provided the arbitrators at that time with the well-settled legal authority demonstrating that the arbitrators were without the power to award attorneys' fees. (Mav. Decl. Exh. 5) Upon submission of main briefs NS United requested the awarding of attorneys' fees. (Mav. Decl. Exh. 6) To remain consistent with its legal position that the arbitrators were not empowered by the parties or the applicable law to award attorneys' fees, Cogent did not request the awarding of attorneys' fees. (Mav. Decl. ¶ 4)  In light of NS United's request for attorneys' fees in its Main Brief, in its Reply Brief Cogent again reminded the arbitrators that Cogent has refused to agree to the use of the arbitration rules of the Society of Maritime Arbitrators because those rules authorized the arbitrators to award attorneys' fees. Id.  In addition, Cogent then also provided the arbitrators with the legal authorities, both case law and scholarly commentary, that the well settled American rule on attorneys' fees governed so that the arbitrators could not award attorneys' fees.  (Mav. Decl. Exh. 8)

In reaching the decision to award attorneys' fees as damages despite the fact that the party's arbitration clause was silent on proving the arbitrators with the authority to award attorneys' fees, and despite the fact Cogent had explicitly refused to agree to

arbitration rules that give arbitrators that very authority, the majority ignored New York law which precludes arbitrators from awarding attorneys' fees not provided for in the party's arbitration agreement. (Mav. Decl. Exh. 9, p. 30) In doing so the majority simply disregarded the New York law. Id. However, the Supreme Court in *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1767 (2010), which was also a dispute arising out of a maritime contract, found that in the face of an arbitration clause silent on the authority granted to the parties on an issue, arbitrators are required to look to an applicable rule of law to be found in the FAA itself, federal maritime law or New York law. *Stolt-Nielsen SA*, at 1768. The majority in its decision here, explicitly disregards New York law and relied on what it considered to be a broad arbitration clause referring to "any disputes and differences" with no reference to New York law to support its disregard of New York law. (Mav. Decl. Exh. 9, p. 31) Here again, Justice Alito in *Stolt-Nielsen SA*, at 1770, writing for the majority, found that in the face of a silent arbitration clause on a point in issue, the breath of the arbitration clause is inconsequential to the task the arbitrators are called upon to perform in identifying the rule of law they must apply.  Similarly, reliance on *PaineWebber Inc. v. Bybak*, 81 F.3d 1193 (2d Cir. 1996) as a basis for disregarding New York law here, as the arbitrators erroneously relied on *Green Tree Financial Corp v. Bazzle*, 539 US 444 (2010) in *Stolt-Nielsen SA*, fails to justify the arbitrators disregard of New York law. *See*, *Stolt-Nielsen SA*, at 1770. In doing so the majority here relied on *PaineWebber* to concluded that the breath of the arbitration clause before them allowed them to disregard New York law, which the Supreme Court in *Stolt-Nielsen SA*, at 1768 fn.3, found the arbitrators there also attempted to do and for

which the Supreme Court concluded had they had acted in manifest disregard of the law.

(Mav. Decl. Exh. 9, p. 31)

### B. THE MAJORITY ALSO EXCEEDED THEIR AUTHORITY IN AWARDING ATTORNEYS' FEES AS DAMAGES

1. <u>Applicable Legal Standard-Arbitrators Exceeding Authority</u>

The Federal Arbitration Act provides that arbitration awards must be vacated when in issuing their award the arbitrators exceeded their authority. 9 USC § 10 (a)(4) 2006. Professor Domke's treatise on arbitration notes that the authority of arbitrators is contractual in nature. <u>L. Edmonson, *Domke on Commercial Arbitration*</u>, 3rd Ed, §39.6, p. 39-12, (2006) Further, it is the parties to arbitrations, that in their contractual arrangements that contain arbitration provisions, which grant arbitrators the authority to act. Id. Thus, for the purposes of determining whether arbitrators have exceeded the authority granted to them by the parties in rendering an award, the courts need to focus on whether the arbitrators had the authority to reach certain issues, not if those issues were correctly decided. <u>L. Edmonson, *Domke on Commercial Arbitration*</u>, 3rd Ed, §39.6. As put in another way, in that same treatise on arbitration, an arbitration award must be based upon the agreement of the parties and the issues those parties have agreed to present for resolution by arbitrators. Id. The Supreme Court has thus noted in arbitration cases before it raising the issue of the scope of arbitrators' authority that arbitrator's award must draw its essence from the arbitration agreement. <u>United Paperworkers v Misco</u>, 484 US 29, 108 S.Ct. 364 (1987); <u>United Steelworkers v. Enterprise Wheel</u>, 363 US 593, 80 S.Ct. 1358 (1960)

2. <u>The Legal Standard Applied to the Facts at Bar</u>

Here again *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1767 (2010) is perhaps most instructive. As in the facts before this Court, the arbitration clause in that matter arising out of a maritime contract was silent as to the arbitrators authority on an issue ultimately decided by the arbitrators without regard to the rules of law they were required to consult. *Stolt-Nielsen SA*, at 1768-69; (Mav. Decl. ¶ 2) Nor had the arbitrator's in *Stolt-Nielsen SA,* at 1768 fn.4, considered what the parties may have intended as to the authority that would be given to the arbitrators by the parties.  In contrast, from the outset of the proceedings Cogent specifically refused to adopt arbitration rules for their arbitration, which would have empowered arbitrators to award attorneys' fees. (Mav. Decl. ¶ 2) A position Cogent continued to articulate and maintain during the arbitration proceedings and at the final submission of briefs to the arbitrators. (Mav. Decl. ¶ 3) Consistent with that position, Cogent explicitly declined to either request or document claims for attorneys' fees when requested to do so after the submissions of briefs. (Mav. Decl. ¶ 4) The fact that Cogent did not submit a claim for attorneys' fees and explicitly refused to proceed under arbitration rules that would have authorized the arbitrators to award attorneys' fees were cited by Mr. Berg in his dissent whereby he concluded that the majority had exceed its authority and acted in disregard of the law in awarding attorneys' fees. (Mav. Decl. Exh. 9, Berg Dissent p. 6) Clearly, Cogent's intention to not empower the arbitrators to award attorneys' fees was made known to the arbitrators from the very initiation of proceedings. (Mav. Decl. ¶ 2-3)

Even the majority's reliance on what they concluded was the wide breath of the arbitration clause agreed upon by Cogent and NS United, by quoting dicta from the

decision in _PaineWebber Inc. v. Bybak_ 81 Fed 3d 1193 (2nd Cir, 1996) to award attorneys' fees, was itself misplaced as a justification to claim arbitral authority the parties never intended to grant to the arbitrators. (Mav. Decl. Exh. 9, p. 31) Arbitrators can not simply look to the arbitration clause at issue alone, without regard to what the contracting parties that agreed to that clause may have intended and did during their arbitration, to determine their authority granted by that arbitration clause.  As Justice Alito explained at the beginning of his opinion for the majority in _Stolt-Nielsen SA_, at 1767, the arbitrators are called upon to interpret and apply the agreement of the parties and exceed their authority when they go beyond that task. When they do so they exceed their authority which is a grounds for vacating an award as provided for in Section 10(a)(4) of the FAA. Id.

Consistent with those principals required under the FAA, in _Banco De Seguros Del Estado v. Mutual Marine Office_, 344 F.3d 255 ( 2nd Cir, 2003) a panel of the Second Circuit was  called upon to determine whether the court below correctly analyzed a challenge to an arbitration award grounded on the claim that the arbitrators exceeded their authority in granting a provisional remedy during a pending arbitration.  There the court explained that in such an inquiry the courts must focus on whether the arbitrators had the authority to reach the matter at issue based upon the arbitration agreement or the parties' submissions to the arbitrators. _Banco De Seguros Del Estado_ at 262   For as the court described the task before it: "...We must determine 'whether the arbitrator(s) act within the scope of (their) authority,' or whether the arbitral award is merely the 'arbitrator(s') own brand of justice'..." (citation omitted) See also: _Katz v. Feinberg_, 290 F.3d 95, 97 (2nd Cir, 2002) Similarly in _Totem Marine Tug and Barge v. North American_

*Towing*, 607 F.2d 649, 651 (5th Cir. 1979) which arose out of a maritime contract, the Fifth Circuit vacated an arbitration award in which the arbitrators had exceeded their authority by awarding damages on an issue that had not been presented to the arbitrators. In determining what the scope of the authority was in reaching its decision, the court in that case looked to not only the arbitration agreement, but the parties' conduct and submissions to the arbitrations during the arbitration. Id. By going beyond the issues that the parties had agreed to submit to arbitration at that point, the court found that the arbitrators had: "...ignored the arbitral dispute submitted by the parties and dispensed their 'own brand of industrial justice". *Totem Marine Tug and Barge*, at 652

In *Katz v. Feinberg*, 167 F.Supp 2nd 556 (SDNY, 2001) Judge Haight vacated an arbitration award in which the arbitrators exceeded their authority by reaching an issue that had not been submitted. In reaching his decision he explained that as a matter of contract, the scope of the arbitrator's authority depends upon the intention of the parties as manifest in the arbitration agreements and the submissions to the arbitrators. *Katz*, at 566. Further, in making its determination as to the scope of the arbitrator's authority, "...the Court applies ordinary principles of contract interpretation." *Id.* (citation omitted)

Finally, most recently in *Schwartz v. Merrill Lynch & Co.*, 665 F 3d 444, 452 (2d Cir. 2011) the Second Circuit noted that an arbitration award may be vacated in circumstances where the award is in manifest disregard of the parties arbitration agreement.

The facts here clearly demonstrate that the majority in awarding attorneys' fees as damages despite an arbitration clause silent on that authority exceed their authority in doing so. (Mav. Decl. ¶ 2) Beginning at the first hearing held only for administrative

purposes, right through the final submission of brief at the conclusion of hearings, Cogent

repeatedly refused to agree that the arbitrators had been authorized to award attorneys'

fees. (Mav. Decl. ¶ 3-4) Not only did Cogent explain during the arbitration that it never

agreed to authorize the arbitrators to award attorneys' fees, but is also provided the

arbitrators on two occasions with well settled legal authority demonstrating that lack of

authority. (Mav. Decl. Exh. 5, 8)

### C. DESPITE REPEATED OBJECTIONS THE PROCEDURES USED BY THE ARBITRATORS WERE FUNDAMENTALAY UNFAIR BECAUSE THEY ALLOWED SUBSTANTIVE MATTERS TO BE SUBMITTED BY EMAIL WITHOUT INVITATION WHICH RESULTED IN UNILATERAL SUBMISSIONS THAT PRECIPITATED DECISIONS BEFORE BOTH PARTIES COULD BE FULLY HEARD

The courts do not generally oversee the procedures used by arbitrators in

conducting arbitrations. _Asturiana De Zinc Marketing Inc.v.LaSalle Rolling_ Mills, 20

F.Supp.2d 670, 672 (SDNY, 1998) They can however determine whether the procedures

used by arbitrators were fundamentally unfair. _Tempo Shain Corp v, Bertek Inc._ 120 F.3d

16, 20 (2d Cir. 1997) Further, as the Supreme Court has noted:

> "(t)here is no federal policy favoring arbitration under
> a certain set of procedural rules; the federal policy is
> simply to ensure the enforceability , according to their
> terms , of agreements to arbitrate." _Volt Info Sciences_
> _Inc. v. Bd. of Trustees of Leland Stanford Jr. University_
> 489 U.S. 468, 476 (1989)

Moreover as the Supreme Court made clear, the party's agreements that need to be

enforced may extend to the very procedures under which their arbitration will be

conducted:

> Arbitration under the Act is a matter of consent, not
> coercion, and the parties are generally free to to
> structure their arbitration agreements as they see fit.
> Just as the may limit by contract the issues which they

14

> will arbitrate, (citation omitted) so too may they specify
> by contract the rules under which that arbitration will be
> conducted. _Volt Info Sciences,_ 489 U.S. at 479

Here the contract between the parties in the form of an arbitration agreement was silent as to the procedural rules under which the arbitration would be conducted. (Mav. Decl. Exh. 1) As a result of the silence, at the very first hearing to be limited to scheduling the arbitrators addressed the absence of procedural rules, the arbitrators asked whether the parties would accept the use of the arbitration rules of the Society of Maritime Arbitrators in New York. (Mav. Decl. Exh. 2) Because those rules specifically empowered the arbitrators, among other things, to award attorneys' fees and cost, Cogent refused to agree upon those rules. (Mav. Decl. ¶ 2) As with any contract for which terms are supplied during the course of performance , procedures for this arbitration were actually agreed upon by the parties as the arbitration progressed which NS United both participated in and acknowledged was being done. (Mav. Decl. Exh. 19, p, 3-4, 1613)

However, the subject arbitration clause did not empower the arbitrators to conduct the parties arbitration by a procedure that allowed for substantive matters to be done by email. (Mav. Decl. Exh. 2) Nor did both Cogent and NS United during the courses of performance of that contract to have the arbitrators conduct substantive matters by email. Nevertheless, over Cogent's repeated objections during the course of the arbitration, the arbitrators repeatedly allowed the arbitration to be conducted by email despite Cogent having never agreed to arbitrate in that way.  (Mav. Decl. ¶ 9)

In those objections Cogent's counsel explained that allowing that procedure was fundamentally unfair for a number of reasons. Submissions, by email at any time or day of the week allowed the party sending those emails to makes its case before the

respondent even had an opportunity to reply. (Mav. Decl. Exh. 17, p. 4-5) By doing so it allowed that party to try and predispose the arbitrators towards their position before the presentation of a contrary position. (Mav. Decl. Exh. 4, p. 24) And in the case of the party's positions regarding the arbitrators power to award attorneys' fees, it precipitated a decision by the arbitrators to refuse to take submissions from Cogent on that issue despite the fact that NS United had already done so. (Mav. Decl. Exh. 5) NS United did not initially prevail on that request that security be posted to secure any award for attorneys' fees, but it was allowed to make its case for attorneys' fees before Cogent was even allowed to respond. (Mav. Decl. ¶ 3)

## CONCLUSION

Wherefore, Cogent respectfully prays that this Honorable Court issue Orders:

1. Pursuant to 9 USC § 10(a)(4) (2015) vacating the portions of the majority's January 23, 2015 Award granting NS United Damages in the form of attorneys' fees in the amount of $889,547.95 ;

2. Vacate the portions of the majority's January 23, 2015 award granting NS United Damages in the amounts of $1,324,836 for the first period after Cogent's breach of contract, in the amounts of $8,609,064 for a later period of time after Cogent's breach of contract and in the amounts of $889,547.95 for attorneys' fees as being awarded in manifest disregard of the law;

3. And for such other and further relief as the Court may deem appropriate in the instant matter.

Dated:  New York, New York
        April 14, 2015

Mavronicolas &amp; Dee LLP

By:  /s/ Anthony J. Mavronicolas_____
     Anthony J. Mavronicolas
     415 Madison Avenue, 18th Floor
     New York, New York 10017
     (T) 646.770.0024
     (F) 866.774.9005
     amavronicolas@mavrolaw.com

*Attorneys for Respondent, Cogent Fibre, Inc.*

To:   **Via ECF Filing**
      Blank Rome LLP
      Richard Singleton
      405 Lexington Ave
      New York, NY 10174